FILED/REC'D

2025 NOV -6 P 1: 53

# WESTERN DISTRICT OF WISCONSIN FEDERAL COURT
CLERK OF COURT
U.S. DISTRICT COURT

## 1983 violations of RANDY KEEFE'S CONSTITUTIONAL RIGHTS UNDER THE FORTH , FIFTH AND FOURTEENTH AMENDMENTS

PLAINTIFF, RANDY JAY KEEFE.                    CASE NUMBER

219 EAST FRANKLIN.                    COMPLAINT AND DEMAND
PORTAGE WISCONSIN,53901.              FOR JURY TRIAL

Vs, DENENDANTs.                    **25  CV  918  JDP**

MICHAEL S SCHUTZ,Portage Police Officer in his personal and as
Sergeant of Portage Police Department.
KEVIN M.  TODRYK, Portage Police Officer and in his personal capacity.
KEITH J. KLAFKE, Portage Police Chief in his personal and Official
Capacity as Portage Police Chief.
115 W.Pleasant Street,Portage WI,53901
ET AL
BRENDA L YASKAL ,in her personal and Official Capacity as Columbia
County District Attorney.
JORDEN LIPPERT,in his personal and his official capacity as Proscutor for
the State of Wisconsin and Columbia County Assistant District Attorney.
400 Dewitt Street,Portage WI,53901
ET AL
JULIE KAYARTZ,In her personal and Official Capacity as Columbia County
Clerk of court
SUSAN RAIMER, in her personal and Official Capacity as Former
Columbia County Clerk of courts .
400 Dewitt Street,Portage WI,53901
 ET AL
 JUDGE TODD HEPLER,In his personal and Official Capacity as Columbia
County Judge.
400 Dewitt Street,Portage wi,53901.    ET AL

PLAINTIFF Randy Keefe is a Columbia County resident, and resides at 219 east franklin st. Portage Wisconsin  , Brings this complaint Pro -se against the parties as they are  listed above and in support of this complaint provides the following.

INTRODUCTION

All of the Parties listed above are SWORN OFFICERS OF THE COURT,Taking an oath to uphold the constitution of the UNITED STATES AND THE STATE OF WISCONSIN AND THE STATUES OF BOTH. These same parties are responsible for the protected and true evidence,the Record of Events in the COURT RECORD AS IT IS USED AND RELIED ON BY OTHER JUDGES AND MEMBERS OF THE COURT.

WHEN THESE PARTIES DECIDE THEY WANT THEIR OUTCOME OF A CRIMINAL CASE TO BE WHAT THEY WANT IT TO BE ,THE EVIDENCE TO BE OTHER THAN WHAT IT IS, AND THEY CONTROL THE TRUE RECORD AND CAN SHOW IT OTHER THAN WHAT IT IS, AND THEY CAN ALTER AND CONTROL WHAT IS PRESENTED TO A JURY AND JUDGE, THEY CAN CONTROL THE OUTCOME OF ANY CASE THEY WANT.

This action brought before this Court Will show that the entire COLUMBIA COUNTY CIRCUIT COURT RECORD FOR 2020CF0065 AND TR4425R AND THE SWORN TESTIMONY OF STATE PROSCUTOR JORDEN LIPPERT,AND PORTAGE POLICE OFFICER MICHAEL SCHUTZ,AND COLUMBIA COUNTY CLERK OF COURTS SUSAN RAIMER DID IN FACT OFFER PERJURED TESTIMONY AT A EVIDENTIARY HEARING BEFORE JUDGE TROY D CROSS, AND HEAD DA OF COLUMBIA COUNTY BRENDA YASKEL DID OBSTRUCT JUSTICE BY UPHOLDING EVIDENCE SHE KNEW TO BE FALSE FORWARDED TO COLUMBIA COUNTY SHERIFF'S DEPARTMENT. AND JUDGE TODD HEPLER GAVE THE PARTIES HIS JUDICAL PERMISSION TO ALTER EVIDENCE AND COMMIT PERJURY BEFORE HONORABLE TROY D CROSS.  SUSAN RAIMER CLERK OF COURTS and JUDGE HEPLER DID PROVIDE  FALSE MISLEADING STATEMENTS OF FACT TO THE DIRECTOR OF STATE COURTS TO STOP THEM

FROM PROCEEDING ON RANDY KEEFES COMPLAINT THAT WAS
FILED WITH THE DIRECTOR OF STATE COURTS OFFICE.

All of the actions of the named parties resulted in their successfully
being able to use positions of TRUST AND AUTHORITY to successfully
deny Randy Keefes CONSTITUTIONAL rights and undermine the rule of
law, destroy and hide evidence, commit perjury before The Honorable Troy
D Cross  to stop Randy Keefe from being able to undermine and prove the
conspiracy,and seek justice even having THE WISCONSIN DEPARTMENT
OF JUSTICE TO CLAIM CONFLICT OF INTEREST IN THIS CASE.

### VIOLATED STATUES

939.31 Conspiracy
939.05 Party to a crime
753.30 Clerk of circuit court ;duties, powers.
946.72 Tampering with public records and notices.
946.41 Obstructing an officer
946.31 Perjury
946.32 False swearing
18 U.S. Code 1622 Subornation of Perjury
Spoliation
Duty to preserve

The Defendants  violated Randy Keefe's  5th and 14th amendments
to the Constitution and also the 4th amendment to the Constitution.

The overt acts of the Defendants to hide the conspiracy and to
OBSTRUCT justice will be exposed in these claims.


JURISDICTION AND VENUE . The causes of action in this case arises
under the Constitution and laws of the United States,and subject matter
jurisdiction is therefore proper under 28U.S.C.§§1331and 1343.

This Court has authority to grant the requested declatory relief pursuant
to 28 U.S.C. §§2201 and 2202 and Fed.R.Civ.P.57. It has authority to
award attorneys' fees and costs pursuant to 42 U.S.C .§1988.

All events or omissions giving rise to this cause of action occured in
Portage in Columbia County ,Wisconsin,which is in the Western

District,Madison division.Venue is therefore proper under 18 U.S.C.§ 1391(b) (2)

Under 42 U.S.C.§ 1983,`` Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunity secured by the Constitution and laws, shall be liable to the party injured in an accident law, suit an equity, or other property proceedings for redress. At all times and with respect to all matters alleged here in, each of the defendants was acting under color of State law.

Judge Hepler while acting under color of State Law and as the " final policymaking authority" for the Columbia County Court House and the State of Wisconsin did direct the other named defendant's And Portage Police Chief Keith J Kaflke to deleate an evidence record and use their positions and offiicers under their control to forever hide the events that denied Randy Keefes CONSTITUTIONAL rights on the morning of February 7th 2020.

As the motive for these actions of the Defendants, none of the listed Defendants had at any time ever had any direct confrontations nor personal involvement with Randy Keefe in their Offices or Personal involvement.

Judge Hepler had a totally unbelievable involvement when he inherited Randy Keefes Divorce case from Marquette County.

His handling of the case was bias and prejudice toward Randy Keefe and resulted in complaints Being filed by Randy Keefe.

Judge Heplers actions and decisions in the divorce case were not just for the benefit of Randy Keefe's ex- wife but her Attorney also who was a good high school friend of Judge Heplers as she gained control of a business that was clear of any and all debt per Judge Hepler.

Ex- wife and Attorney $165,000 dollar business per year, 130,000 dollar assets, and Randy Keefe 165,000 dollars debt from the actions of embezzling from an LLC by his ex-wife and knowledge of it  by her Attorney. This can be verified at the request of the Court.

1.   On February 6th 2020, Portage police officer Sergeant Michael Schultz as shown by the record in case 2020 CF 000065, started with a supposed speeding violation, it led to a blood draw warrant that was secured with Judge Todd Hepler the on-duty late night judge on feb 6,2020

   Other e-mails between Officer Schutz and Judge Hepler on the evening of feb,6 2020 show there was bad history between Randy Keefe and Hepler,because of decisions Judge Hepler made in Randy Keefe divorce.

   Judge Hepler sent two copies of The Blood Draw Warrants which is protocol to officer Schutz squad car.

   Officer Schutz then proceeded with the 2 warrants upstairs at the hospital where Randy Keefe was being held and served upon Randy Keefe an unendorsed by Officer Schutz Blood Draw Warrant.

   After blood was drawn Randy Keefe was then transported to the Columbia County Sheriff's Department and bailed out the next day.

   As Portage police protocol dictates officer Schutz then on February 7th 2020 entered the documents including citation# BD-627-068-1. Notice of intent to revoke operating privileges and his copy of the blood draw warrant which still was not endorsed by Officer Schutz Into the Portage police evidence file.

   The documents were then entered according to Portage police protocol into the TRACS system on feb 7  so that the evidence that included the notice of intent to revoke and also the blood draw warrant which accompanied it so it could be viewed and retrieved by the Columbia County Clerk of courts office to start up the revocation case,by the DA's office so they could prepare charges and also could be viewed and retrieved by the issuing judge Todd Hepler.

2.   The Defendants  reviewed the TRACS entry on the morning of February 7th 2020 just prior to 8:00 a.m.

   After the Defendants reviewed the citation BD-627-068-1 and the blood draw warrant in the TRACS SYSTEM it was noticed that officer Schutz had not in fact endorsed the blood draw warrant in his possession either as it was unindorsed in  the  Tracs evidence system.

3.  At this time all the Defendant's, Judge Todd Hepler, the Columbia County Clerk of Courts office, the Columbia County DA's office and the

Portage Police Department all under Judge Hepler's protection and direction as he was in control of both the TR case and the CF case entered into a conspiracy to delete the record in the TRACs system in order to alter the BLOOD DRAW WARRANT to correct the fatal defect and secure Judge Heplers stronger  case.

Exhibit 1.    This document was hid even after repeated attempts to retrieve it and it will be shown to what lengths the parties went to hide the document even after  a motion to compel the production of documents was brought by Randy Keefe. THIS DOCUMENT EXPOSES THE ENTIRE DEPTH OF THE CORRUPTION INITATED BY JUDGE HEPLER BECAUSE HE HAD TO GET RANDY KEEFE.  JUDGE HEPLER USED THE COLUMBIA COUNTY DISTRICT ATTORNEYS OFFICE,MEMBERS OF THE COLUMBIA COUNTY CLERK OF COURTS OFFICE, AND ALSO THE PORTAGE POLICE DEPARTMENT INCLUDING CHIEF KAFKA TO DENY RANDY KEEFE'S CONSTITUTIONAL RIGHTS  and alter the blood draw warrant by Chief Kafka giving the command to Kevin Todryk to deleat the record and having officer Schutz endorse it sometime after the deleting of the record on the morning of February 7th 2020 as if it was endorsed by Officer Schutz before being entered into the evidence system.The now deleted documents were not entered into any record keeping system or case until 167 days later on August 10th 2020

 4.  Jordan Lippert prosecutor was then supplied after feb 7 2020 with an endorsed version of the Blood Draw Warrant that Officer Schutz knowingly illegally signed after it was deleated from the TRACs system,and Proscutor Jorden Lippert  could then use the now corrected blood draw warrant for increased penalties on the charges and use Proscutorial bluffing against an unwary Randy Keefe.

5.   Judge Hepler used the increased penalties charge in considering the $2,000 Bond release of Randy Keefe on February 7th 2020.

6.   On February 14th 2020 Randy Keefe filed a notice for hearing on the notice of intent to revoke and also for a substitution of Judge Todd Hepler. Judge Hepler now lost control of the case and had to rely on the entire Clerk of Courts office the entire DA's office and the Portage Police

Department to hide the deleting and altering of the record on February 7th 2020.

7.   On February 25th 2020 prosecutor Jordan Lippert supplied Randy Keefe with his charging evidence. The documents supplied to Randy Keefe contained both an UNENDORSED version of the blood draw warrant, and an ENDORSED warrant which simply cannot exist together,Jorden Lippert simply forgot to take the original Blood Draw Warrant out of what he recieved in the Tracs system on the morning of February 7th,2020, Jordan Lippert also supplied the notice of intent to revoke citation BD 627-068-1 on February 25,20 which was the deleted citation in EXHIBIT 1 with no mention of it being issued incorrectly and other supporting documents totaling 25 documents.Jorden Lippert will later testify under oath that he received all the Documents on the morning of February 7th 2020.If the Da's office received the Documents how could the Clerk of courts office not receive them. Exhibit 1 proves the Clerk of Courts did have # citation BD 627068-1 to start the TR case but could not use it because it was accompanied by the Unendorsed Blood Draw Warrant

8.   On June 25th 2020 Jordan Lippert prosecutor forwarded to Randy Keefe his plea agreement offer also using the increased penalties of the invalid blood draw warrant all while knowing that none of the documents existed in the record.

9.   Randy Keefe did not accept such plea and on August 6th, after trying to receive a date stamped Blood Draw  Warrant from the record from Jorden Lippert he was told by prosecutor Jordan Lippert to go check with the Clerk of Courts office.

10.   Upon his arrival at the Columbia County Clerk of Courts office on August 10 2020,167 days after the start of the case he was told that no documents existed in the record, the clerk of courts then took his documents date stamp them and claimed that somebody must have made a mistake.

11.   The Clerk of Courts office claiming that someone had made a mistake contacted the Portage Police Department and had them resend into the system the notice of intent to revoke citation BD 627-068-1 and its accompanying documents but this time entered an endorsed by Officer Schutz BLOOD DRAW Warrant was entered into the evidence system.

12.   The Clerk of Courts office then claimed they now had the Documents to start the Revocation case 2020TR4425R. And proceeded to start it with Judge Hepler in control.

13.   Everything that prosecutor Jordan Lippert had done up to that point with the blood draw warrant, offering the plea agreement and using the warrant as if it was endorsed could have been hidden if Randy Keefe would have agreed to the plea agreement, Randy Keefe would have had no recourse because nothing was entered into the record and it could have been simply been viewed as prosecutorial bluffing or prosecutorial misconduct by Jorden Lippert.

14.   When the defendants, the conspirators decided to enter the now-altered BLOOD DRAW WARRANT That had previously been deleated from the Tracs evidence record and endorsed by Officer Schutz after the fact and now reentry into the record they now have committed felony crimes.

15.   In mid-october 2020 Randy Keefe filed a complaint with the Columbia County Sheriff's Department for misconduct in public office but did not have most of the evidence at that time that is in this complaint regarding judge Todd Hepler and Susan Raimer Columbia County Clerk of Courts handling of 2020 CF 000065 and starting of case 2020 TR4425R

16.   The investigating officer ,Detective Sgt Clark in his report 11 -1-2020 forwarded to Randy Keefe"" in mid-october 2020 I received a voicemail on my desk phone from a male subject who identified himself as Randy Keefe stated he wanted to talk with somebody about what he believed was misconduct in public office regarding judge Hepler and the Columbia County Clerk of courts." " Randy stated that he felt that judge Hepler had directed the clerk of courts to improperly file documents in his court case because judge Hepler is afraid of what he's going to expose him for what he did with regards to Randy Keefe's divorce case. Randy explained that he has an ongoing issue with how his divorce and a civil issue regarding a business in Marquette County was handled" Sergeant Clark also stated" I did make contact with the Columbia County Clerk's office and found that their explanation for what had occurred was that the revocation items which should have been filed separately, were placed under the felony case in

error and when it was determined that it had been done on incorrectly, it was refiled properly" .

NO DOCUMENTS were entered into the felony case 2020CF0065 Except the request for replacement of Judge Hepler and notice for hearing on revocation.

17.    Sergeant Clark further in his report" I reviewed these documents in relation to Randy's complaint filing and potential misconduct in public office with Captain Jason Kocovsky and district attorney Brenda Yaskal and it was determined that there are currently no grounds for the Columbia County Sheriff's Office to conduct any type of investigation"
Exhibit 1. proves that the facts supplied to Sergeant Clark were not the true facts and this was obstruction of Justice by Head Da Brenda Yaskal and the Clerk of Courts Office.

18.    Randy Keefe filed for a motion to dismiss and motion for special prosecutor.

The hearing was held on September 2nd 2021 on the motions and Page 11 line 18.  The Court: Well, just tell me why you are thinking a special prosecutor needs to be appointed in your words. I have read the file. I want to hear Clarity from you.   The Defendant: well, your honor, because of the things that have happened and his involvement in covering up for what has happened and how they manipulated the system to cover for what they have done and what I believe actually destroyed a court record to try to cover up for what they have done, in order to protect what they had what they had done so that it didn't come to light before your honor.

End of testimony

The motion for special prosecutor was granted and prosecutor Jordan Lippert knew at that time that Portage police officer Michael Schutz and Clerk of Courts Susan Raimer would have to falsify their testimony at the upcoming hearings they had to be false but on point with each other to hide the existence of the conspiracy.

Prosecutor  Jorden Lippert, Portage Police Officer Michael Schutz and Head Clerk of Courts Susan Raimer were Properly issued SUPONEAS and Brian Juect Appeared as Special Prosecutor.

Because these parties were sworn and under oath and did testify falsely before The Honorable Troy D Cross to defeat the motion to dismiss, their false testimony because it was in furtherance of their conspiracy to hide the true criminal events on February 7 2020  to deny Randy Keefe's CONSTITUTIONAL rights their perjured testimony must now become part of this pleading.

Motion to dismiss hearing of October 12 2021.

Prosecutor Jordan Lippert not only knew that Sergeant Schutz and Clerk of Courts Susan Raimer would have to perjure themselves before the special prosecutor Brian Juect, he knew they would have to perjure themselves before JUDGE Troy Cross in order to successfully hide their criminal actions committed prior on February 7,2020,and their finalization of their felony crimes on august 10 2020 using their false claim that a clerk had made a mistake so that they could enter their altered BLOOD DRAW WARRANT and all of the Documents they withheld including citation BD-627-068-1 the exact Citation they deleated from the record on February 7,2020 and the same citation they used on August 10 2020 to restart the TR case.    . Exhibit 1

19.    .Testimony of Sgt Schutz, Questions by Randy Keefe.
Page 18,line7-Q. Can you tell me what that document is? A. It appears to be the heat transfer paper used in squad cars and a copy of a search warrant. Q. and is it signed? A. It is not. Q. .Okay so it's possible that you made a mistake and signed one and not the other? A. Correct. Q. Okay and when do you recall when you signed the other document? A. As I said,I would have been required to print off two, one for my case File and one for you. The one that I would receive from the judge would have been signed immediately which I would have kept in my case file. Q. Okay. So you served me an unsigned warrant? A. If this is the one that I served you then yes. Q. Okay. And there is video of you coming upstairs with the paperwork, would you have signed it before you brought it upstairs? A. I dont remember. Q. Would you have that copy of the original? A. That is back at the Portage Police Department in original case files. Q. But it would exist? A. correct

20.    Testimony of Susan Raimer head clerk of Courts.
By Randy Keefe page 26,line 7. Q. Could you tell me what the standard procedure is when an officer supplies you with a notice of intent to revoke

and the other documents for a TR case?   A. Okay. When we receive that
from the law enforcement agency, the standard procedure is the day or at
least within 24 hours of the time we receive it, we open a TR case because
the notice of intent is the opening document for that case. And so we would
enter that, open the case, put in the party information, and then file what
other documents came with that. Q. Okay. So on August 10th, you started
a case 2020 TR 004425r is that correct? A. My office did. I have done no
entry in the case other than two requests for substitution. But the clerk that
took it in, yes, open that case at that time. Q. So would the clerk would that
2020tr 004425r came into existence at that point in time? A . Yes

  Page 27,line 1 . Q. on the top of that document, does it not say case 20
20 TR 4425r, document number seven, scanned 02/14  2020. A. .Yes it
does.

  Q. How could that case number exist back in February if it didn't come
about until August 10th? A. When I had received your subpoena, I had not
looked at the cases, so I did take a look at the documents that were in it so
I could be somewhat familiar with them. We did receive this on February
14th. It was entered into the CF case. And as I looked at this since I didn't
do the entry, I have no explanation as to why that did other than unless it
was a clerk error by typing in some number, pushing a wrong box because
that case was not in existence at that time. Q. Is it possible that the case
was in existence? A. The case would not have been opened without the
notice of intent that's what opens the case. And this is not a notice of intent.
Again, I have no explanation as to why that has that date stamp on. Our
CCAP system does make mistakes. I just don't have an explanation for it.

21.    Questioning of Susan Raimer by special prosecutor Brian Juect
    Page 40, line 2 by Mr Jewett. Question.  and your procedure is not to
open a refusal case without the notice of intent to revoke, correct?  Answer.
That is what opens it on the CCAP system. Question.  okay. So even if you
receive a request for a refusal hearing, if you don't have that document, you
don't have a refusal hearing to put that with, correct?  Answer.  correct
Question.  is that why in this case was put with a Criminal matter because
that was the only case open? Answer . correct . Question.  And from there,
is it safe to say the clerks would do nothing with it because there's no

refusal case? Answer. correct. Question. on that August date, there was information received from the Portage police department, is that correct? Answer. yes. Question . And that was the information that started the matter? Answer. correct. Question. and based upon your knowledge, was the clerk's office first made aware of that information and first provided that information for the TR case in August 10th of 2020? Answer . It was the day we first started looking was the day that Mr Keefe came to our counter and asked for filed stamped copies. That was the first time we were aware. Whether that was August 6th or August 10th, it may have been in between there when we made the inquiry then and the papers were actually filed with us. Question.   okay. So it would have been around early August of 2020? Answer. Correct . Question . And then you got the information on August 10th of 2020 from Portage police? Answer. ,Correct. .Question. And that's when you would have started this case?  Answer , Correct,  Question .,This case was not started, deleted, and restarted, correct? Answer,
 correct , Question there was no conspiracy between you and judge Hepler and the Ada Lippert to delete a case,   Answer .No


22.       Sworn testimony of Proscutor Jorden Lippert
 Page 51,line 1 Q. Okay. You don't recall how you got these documents? A. How I received these first documents was through the our protect database system. I believe that I received either a notice or a message that the these documents have been received by our office and have been imported into the protect database. I was informed that I was that you were in custody and that because we have these documents imported and a case File set up that it was an appropriate time for me to review and make a charging decision on the case. So the first time I ever encountered these documents was through the protect database. Q.  Im sorry, was when? A.  Was through the Protech database. I access them through our protect database.

    Page 52,line 10 ,Q.  when did you recieve those documents?
 The court: when you're referring to those documents, we'll just make it clear, it's exhibit one which I believe are the police reports. Witness lippert A.  I don't recall the specific date. But you were in custody at the time, so I

think it was either, I think it was probably the next day from the date of the incident.

23.    Brian Juech appointed special Proscutor had his argument for the court : page 58, line 15. I would ask the court to deny the defendant's motion to dismiss, both the CF and a TR matter. Heard testimony today from a variety of different parties: the sergeant involved in the case, the clerk of courts, and the ADA assigned to the case. What we have here really, your honor, is a clerical error. Somebody didn't send in the appropriate paperwork for the TR to get it filed immediately however, that was rectified. There's been no showing that there was any Prejudice as far as that case is concerned as it's still open today, and the defendant is still able to challenge that case and is doing so through the court system. There's been no Prejudice shown on a TR case whatsoever. With regards to the CF case, there's really been no argument as to why this case should be dismissed. Really the only area where I can find some sort of error was that not a search warrant return it till sometime down the line, not within the time that's prescribed in the statutes.

24.    Randy Keefe's argument: page 60 line13,  well your honor, based on some of the testimony we heard today, there are rules that are put in place and certain things have to be done a different way. I don't believe you can rely on a clerical error in this case. I have got the original signed warrant which was unsigned, Jordan perjured himself on the stand.The court: How so? DEFENDANT: video. The court: you have video of mr Lippert perjuring himself? DEFENDANT: i have Mr. Lippert bringing up the search warrant, not signing it, and giving it to me. I believe. The court: Mr Lippert doesn't sign search warrants. Defendant :excuse me. Mr schutz.  The court: I was going to say Mr Lippert doesn't sign I just wanted to clarify, so you're referring to Sergeant Schutz now, not Mr lippert?  The defendant :yes sir. The court: okay just wanted to clarify that. The defendant so I've also requested, which I haven't got yet from the Portage police department, as far as the record that was sent to the clerk of courts office. They told me there that the documents were sent. I filled out an application to get those documents. They said because of their switch from their old system to the

new system, they didn't know if they would be able to obtain them. The court : Which documents are you referring to. The defendant: The documents that Mr Lippert had in exhibit that were an exhibit one . The court: okay. So you want the same documents from the Portage Police Department that you already got from the District Attorney's office? The defendant: I want to be able to show that everything was done the way it was supposed to be, but then somebody pulled the documents out. And I. believe that's because they were defective. I believe the unsigned warrant came through. And with the other documents that weren't signed, I believe the warrant became signed after the fact. And I believe those are things that I will still be able to get documentation on and prove. The court do you have anything else in your argument?  Defendant :no sir.

END OF TESTIMONY

EXHIBIT. 2. This exhibit shows that no documents were entered into the record of the Felony case as SUSAN RAIMER TESTIFIED FALSELY and shows that when the clerk's office responded to SERGEANT David Clark in paragraph #16 they did have the NOTICE OF INTENT TO REVOKE OPERATING PRIVILEGE. BD627068- 1  in their possession on the morning of February 7 2020 but had to falsify its existence per Judge Hepler.

EXHIBIT. 3 .  CITATION : NOTICE OF INTENT TO REVOKE # BD627068-1.  SUSAN RAIMER TESTIFIED FALSELY ABOUT THIS DOCUMENT WHEN SHE KNEW IT WAS SEEN BY ALL PARTIES ON THE MORNING OF FEBRUARY 7,2020  THEN DELETED FROM THE EVIDENCE RECORD.  EXHIBIT 1

EXHIBIT 4 .   This is the original entry for substitution of Judge entered on February 14,2020 into 2020CF000065

EXHIBIT 5. This document is the Original entry into the existing TR case that had to exist contrary to Susan Raimers sworn testimony.

EXHIBIT 6. This Document shows Judge Hepler was in fact involved in the false testimony and actions of the Defendants when Randy Keefe filed his complaint with the Director of State Courts Office

25.    After the testimony Randy Keefe requested documents under open records request from both the DA's office and Portage Police Department.
  The Portage Police Department supplied the evidence file with one of the first documents entered into evidence by Officer Michael Schutz on February 7th 2020 was the unendorsed blood draw warrant. They did Supply some emails but none regarding the transfer of the documents on the morning of February 7th into the TRACs system.
  The DA's office simply failed to respond. The unendorsed Blood Draw warrant existed in the Portage Police Evidence file, it existed in the deleated Tracs system on February 7 2020 and it existed in the Documents Proscutor Jorden Lippert supplied Randy Keefe for discovery on February 25,2020. Body cam video on the evening of February 6 2020 prove without a doubt that at no time did  Sergeant Michael Schutz endorse either warrant.

  26.   Randy Keefe filed a motion to compel the production of documents
        The motion Was Heard on 01-06-2022 and prosecutor Lipperts arguing before the court will be unbelievable when exhibit 1 of this complaint is viewed and the unbelievable testimony of all parties are exposed.
                    TESTIMONY
27.    The defendant :  okay, you're honor, there was one other thing that I had asked for.   The court: what else are we talking about?    The defendant :  emails.   The court : which emails, from whom to where and when?   The defendant :  I had put in a 10-day request to the Portage police department. I had also in this last motion asked about the emails that were sent on February 7th from the Portage Police Department to –into the system that went to the DA's office and that also the clerk had access to. I had asked for those emails.    The court : well, just before we get there, we

have a couple of other issues. I don't know how far we can go with this, but any emails that Sergeant Schutz may have sent to the district attorney's office could be work product doctrine, and that they may not be discoverable. I don't know. I have no idea what might be in there, if there is anything. So that might be a problem. If he sent any emails to the clerk of courts office, I don't know how that would be work product, so I don't know if that - -first, I don't know if he sent any there. And secondly, if he did, that may be an open record. I couldn't tell you right off.    The defendant : well, the emails, your honor, that officer Schutz put into the record we're in the evidence record from the Portage police department, which I have, so even that email could not be protected.    The court: well, hold on. It depends. If it was sent to the District Attorney's office, again, it could be work product. So I'm not sure which emails you're referring to . The defendant : officer Schutz according to testimony scans the documents, puts them into the system, where  da then pulls them from the system, as does the clerk of court who has access to it.    The court:  no, that's not exactly the way that happens, Mr Keefe. If I'm remembering this correctly, I don't know if it's necessarily emails, but it might be something similar. He puts it in and then it gets sent to the District Attorney's office. And that's where I'm talking about the work product stuff. Mr lippert, your position on that?

28.    Mr Lippert :  Your honor, as I understand the motion, I think that we're talking about our emails that the Columbia County District Attorney's Office received from the Portage Police Department relating to this case. I can inform the court that I made an inquiry to our staff as to the administrative burden that would be necessary to attempt to recover these emails and determine that the cost and the burden of producing these emails were undo. That's why I would ask the court to enter a protective order. And I don't believe there is any relevance at all to the emails that are being requested . I don't understand what the defendant is what the defendant means when he talks about an endorsed and unendorsed warrant. I think it has been fairly well established in this case that a search warrant return was not Timely filed. States position is that the non-filing-- the untimely filing of the research warrant is– The court. : well, that's an issue I have already decided, so we are not going back there now. I wasn't sure what

you were looking for in the email. The defendant : it was decided, your honor, based on perjured testimony. The court. : hold on Mr Keefe  hold on. Perjured. testimony or not, I have already decided on that issue. I'm not going back there. If you don't like that decision, feel free to file an interlocutory appeal with a court of appeals if you want to. I don't didn't know what you were looking for an email.  The defendant. : well, your honor, that email, okay, officer schutz  in his record did not have the endorsed warrant. He only had the unendorsed warrant. He sent it in an email to the DA's office. That was on February 7th. So no endorsed warrant existed. Then between the 7th of february, 2020, somehow the endorsed warrant showed up. So we have got an unendorsed warrant and an endorsed warrant . The court. : but the endorsed- -    Attorney Lippert: judge, I believe the original endorsed warrant should be- - would have been filed with the clerk of courts office. The court. : well, I don't care if it was filed, not filed or anything. There was an issue and Mr Lippert I think conceded this in his statement previously, that the return of the warrant wasn't filed in a timely fashion . The defendant : the return of the warrant? The court : right .  The defendant: that's different than the warrant itself.

29.    The court : but what difference does that make if the warrant was endorsed, if it was not endorsed. If it was still executed.  The defendant : if the warrant was unendorsed, it's not a valid warrant in order to use the blood draw amount in this proceeding.    The court : hold on. Hold on.  The defendant:  The endorsed warrant came about after Mr Lippert received the unendorsed warrant. As of February- -  The court :  just hold on. Give me a second. I think you made a coherent argument. I want to keep that now before we go too much further here.  Attorney Lippert : just so I understand, when we are talking about endorsed, we are talking about Sergeant schutz signing a warrant - - signing the affidavit?  The court: That  would be one endorsement . attorney Lippert :  okay.  The court: just a second. Mr Keefe, What specifically. - - forgetting about the testimony that was held on December 6th, What specifically about the warrant do you think was defective, which would negate or throw out the whole blood test? Tell me in your words.  The defendant. : The warrant was served upon me unsigned.  The court :  unsigned by whom?    The defendant : by Officer

Schutz . The court : so hold on. Let me just follow your train. So you are telling me that on the night in question, when Sergeant schutz and you are in the hospital and he has the warrant there to get the blood draw done, he had the judges signature on it, but he didn't have his signature?    The defendant:  correct. The court :  we never got to that at the December 6th hearing. We went far, far afield at everything that occurred after that. And I made my rulings on everything after that.    However, that issue presents a whole other can of worms that need needs to be dealt with, because in theory - - and judge Hepler May shoot me for this he could be a witness if you're alleging that. And if that's the case, I have to get rid of the case if he's a witness. We never dealt with that issue. We deal with everything that occurred after the fact.    The defendant :  well, your honor, the. - -    THE court : I am just saying that that's something that's - -  The defendant:  I agree, your honor, and that is part of why the phone calls. And there is also the fact that officers Schutz swore. - - The court :  well ,no ,that's separate we went through everything that occurred after. And that, I don't know, maybe part of a contempt proceeding .I don't know. But if you are correct that the warrant it was served upon you was unsigned by the officer, but signed by the judge, we should probably have a hearing on that.   Mr Lippert if that's what he's claiming, we haven't got to that point yet. But if that's what Mr Keefe is claiming, should we not have a hearing on that?  Attorney Lippert : I have not researched the topic in depth. I know - - let me pull up the statue - -  The court :  well, I don't know what the ultimate thing is because there is at least three different ways this could go. But until we have a hearing on it, I have no idea which way we're going. That had not been alleged until now from what I can tell. If you've alleged it, it was lost on me and the rest of everything else.   The defendant : I'm sorry your Honor.  The court: we went far afield. We had all kinds of other stuff that we dealt with on December 6th. That was not one of the things.  Attorney Lippert : yes, your honor, I suppose we should litigate that issue. One thing I am looking for is given the evolution of the claims  here, I am trying to determine exactly - - we have had - - we have already had an extensive evidentiary hearing into the validity of - -well, I wasn't present for much of the hearing, so I can't speak to a lot of the testimony. I have to review transcript. Frankly, I don't know - -   The court :  I don't know either. I mean I

have not done the research on it, but it is certainly a question. And like I said, I can Envision three different directions to go depending on the testimony. And before having the testimony, i have no idea if the court of appeals or the Supreme Court has weighed in on this one yet. Attorney Lippert: Your honor, I think what i would be looking for is for the defendant to actually make the claims he expects to prove before we have a hearing on that.

End of hearing transcripts quotes.


30.. The testimony of the parties officer Michael Schultz and Clerk of Courts Susan Raimer and the testimony of the prosecutor Jordan Lippert is unbelievable. The exhibits show that the clerk of courts definitely had in their possession the documents to start the TR case, the exhibits and the testimony show that the DA's office received all of the documents it needed to proceed with the charging evidence, which was the unendorsed warrant and would have limited the Prosecutor's charging powers.

31.. Jordan Lippert in Number 28 of this complaint argued for a protective order from Judge Cross to forever hide the email of February 7 2020 from the Portage Police Department that was initiated by Judge Todd Hepler that authorized the clerk of court, the DA's office, to criminally delete the documents that they had in their possession so that officer Michael Schutz could endorse the blood draw warrant after the fact so that JUDGE HEPLER could get Randy Keefe, and also to protect Portage police officer Michael Schutz, Columbia County Clerk of Courts Susan Raimer and prosecutor Jordan Lippert along With head DA Brenda Yaskal from the felony crimes that they had committed and their Perjury testimony before the Honorable Troy D Cross. The e-mail deleated was an Exculpatory document.

In number 29 of this complaint Judge Cross touches on the ENDORSED AND UNENDORSED Blood Draw Warrant that Prosecutor Jorden Lippert has desperately tried to misrepresent before Judge Cross.

32 . When the parties all agreed to do their part after deleting the record the Clerk of Court Susan Raimer and Judge Hepler had to have a tenative date to reintroduce all the Documents and the now altered Blood Draw Warrant into the record.

Judge Hepler retained the TR case so He and susan Raimer could reactivate the case if Randy Keefe did not accept Proscutor Jorden Lipperts Plea agreement.

Case TR4425R did indeed exist on February 14 2020 and an unknowing clerk entered the document.  EXHIBIT 5.

33.       During this case Randy Keefe was diagnosed with cancerous tumors in his neck  March of 2021. They were putting pressure on his carotid artery.

By may of 2021 he had started treatments, 7 weeks of chemotherapy and 8 weeks of radiation ,35 treatments.  Randy Keefes father had suffered minor strokes and required more care from Randy Keefe.

Randy Keefe was looking for an Attorney to take over the case as the corruption was overwhelming and his physical and mental abilities from the treatments was overwhelming.

Attorney Amanda Reik became Attorney of Record on 04-11-2022

34.  On APRIL14,2022 Randy Keefe was devastated ,his Father suffered a major stroke and after 6 days his struggle was over and with the lord.

35. . EXHIBIT 6. Randy Keefe filed a complaint on april 4,2022  with the director of state courts office on the discrepancy in the court records and this response from the director of state courts office eliminates Judge Hepler from claiming he had no knowledge of what was taking place with the cases. Judge Hepler if he was unknowing had an obligation to correct the record! He did nothing and forewarded the same excuse given to the Columbia County Sheriffs dept as shown in #16 to the director of State courts office.

36. .  Randy William Keefe Jr. Expressed his concerns to Randy Keefe about an upcoming 3rd Offense Owi hearing before Judge Hepler and Prosecutor Jorden Lippert. Randy Keefe Jr, had suffered from ptsd from having served prison time and had 6 yrs extended supervision and was convinced that if Judge Hepler and Jorden Lippert could do what they were doing in his fathers case they would simply revoke his parole to send him back for 6 years just to inflict more harm on Randy Keefe. Randy Keefe tried to convince him that we would get through it.

37.  Randy Keefe found his son dead of suicide on August 1st 2022,he couldn't stand the thought of prison. He left behind 4 wonderful kids. He was 32.

38. .  On 10-14 2022  Amanda Reik filed a motion to suppress the Blood Draw Warrant . Officer Schutz again committed perjury and Proscutor Jorden Lippert once again upheld the validity of the altered Blood Draw Warrant.
      The first Motion to suppress was denied but because of all the fatal errors that came about with the deleating of the evidence record,and withholding the evidence from any record for 167 days the 2nd motion to suppress was granted.

39.   On 12-02-2022 Troy D Cross did grant the 2nd Motion of Amanda Reik to suppress the Blood Draw Warrant

40.   . The POWER AND THE NEED OF THE KEEPING THE BLOOD DRAW WARRANT IN PLACE BY THE PARTIES IS SHOWN ON 3-23-2023 WHEN BRENDA YASKEL FILED TO DISMISS THE CASE 2020CF000065 BECAUSE OF THE SUPPRESSION OF THE BLOOD DRAW WARRANT.

41 . THE MOTION TO DISMISS 2020 CF 000064  WAS GRANTED BY HONORABLE TROY D CROSS ON 3-28-2023

The defendants egregious conduct, malicious prosecution, and all at the request of Columbia County Judge Todd Hepler so that he could secure his defective blood draw warrant and secure his case, no matter what Columbia County officials or Portage Police Department officers he had to compromise.

Judge Hepler knowingly allowed all the defendants to compromise their sworn oath to office and even allowed them in violations of state and federal law to accomplish his agenda.

Randy Keefe knowing that judge Hepler was using every County office, Clerk of Courts under Susan Raimer, and Columbia County DA's office under Brenda yaskel, and the Portage Police Department under Chief Kafka to secure his agenda and Randy Keefe was literally fighting an entire corrupt Columbia County Court System.


PLAINTIFF REQUESTS THE FOLLOWING RELIEF

A Declaration that Randy Keefe's CONSTITUTIONAL rights were violated and for General damages and punitive damages for the Defendant's especially malicious ,Egregious, and intentional  abuse of their Powers of Office.


Plaintiff also demands Jury Trial


Randy Keefe
219 east franklin
Portage wis,53901
608-347-0967
bigrlogman@yahoo.com