IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

RANDY JAY KEEFE,

                Plaintiff,

    v.

MICHAEL SCHUTZ, KEVIN M. TODRYK, KEITH J.
KLAFKE, BRENDA YASKAL, JORDEN LIPPERT,
JENNIFER MECUM, KIM SCHUTZ, TODD HEPLER,
and SUSAN RAIMER,

                Defendants.

OPINION and ORDER

25-cv-918-jdp

In response to my screening order, plaintiff Randy Jay Keefe brings an amended complaint, alleging that defendants unlawfully drew his blood, manipulated and concealed evidence, and prosecuted him. Although Keefe paid the filing fee, I have the authority to screen the amended complaint before the case proceeds. *Rowe v. Shake*, 196 F.3d 778, 783 (7th Cir. 1999). I will dismiss the amended complaint with prejudice because it fails to state a plausible claim for relief and is barred by several immunity doctrines.

ALLEGATIONS OF FACT

The facts are drawn from Keefe's amended complaint, Dkt. 4, and the docket sheet in Columbia County case no. 2020CF65.

On February 6, 2020, at 7:00 p.m., an officer for the Portage Police Department, defendant Michael S. Schutz, stopped Keefe's vehicle for speeding. During the stop, Officer Schutz began to suspect that Keefe was operating the vehicle while intoxicated, and he applied for a blood draw warrant. The after-hours judge, defendant Todd Hepler, issued the warrant. Hepler sent Officer Schutz two copies of the warrant. Officer Schutz served the warrant on

Keefe, but he didn't endorse either copy. Officer Schutz also mentioned a notice of intent to revoke Keefe's operating privilege. That night, Keefe's blood was drawn. Officer Schutz then transported him to the Columbia County Jail.

Officer Schutz returned to the Portage Police Department, where he entered documents, including the unendorsed blood draw warrant and notice of intent to revoke, into a secure evidence file. Officer Schutz then entered those documents into a secure evidence transfer system called "TRACs," so that Columbia County clerks of court could record and enter the evidence "as they are sworn and bonded to do." Dkt. 4, ¶ 7. The Columbia County District Attorney Office also received the documents in TRACs.

The next day, a criminal complaint was filed against Keefe in the '65 case. Keefe appeared before Hepler, who released Keefe on a signature bond. Before the hearing, Hepler had received the documents in TRACs. Hepler noticed that Officer Schutz had not endorsed the blood draw warrant.

That morning, Hepler contacted the Columbia County clerk of courts, defendant Susan Raimer. Hepler told Raimer that the documents should not be entered into "any record" until Hepler authorized their entry. *Id.* ¶ 13. Raimer instructed the court clerks to delete the documents.

Hepler also contacted the chief of the Portage Police Department, defendant Keith J. Klafke, to arrange for the documents to be deleted. Hepler said that the notice of intent to revoke had been issued incorrectly. Klafke then told a Portage officer, defendant Kevin Todryk, to email clerks at the Columbia County Courthouse, defendants Jennifer Mecum and Kim Schutz, and tell them that the notice of intent to revoke had been issued incorrectly and had been voided in TRACs.

Hepler also contacted the Columbia County district attorney, defendant Brenda L. Yaskal, and told her to disregard the unendorsed blood draw warrant and that a corrected warrant would be provided for their office.

Officer Schutz signed the blood draw warrant sometime between the February 7 hearing and February 25, 2020. On February 25, a Columbia County assistant district attorney, defendant Jordan Lippert, provided Keefe with discovery that included the endorsed blood draw warrant.

In August 2020, clerks at the Columbia County Courthouse told Keefe that documents were entered incorrectly on February 7 and that corrected documents were being provided by the Portage Police Department. On August 10, 2020, Kim Schutz received corrected documents, including the endorsed blood draw warrant and the notice of intent to revoke that had been issued incorrectly and voided in TRACs. Kim Schutz used those documents to start Columbia County case no. 2020TR4425R, a traffic forfeiture case based on the notice of intent to revoke. A complaint against Keefe was also filed in the traffic forfeiture case that day.

On October 12, 2021, a hearing on Keefe's motion to dismiss was held before former Columbia County Circuit Court Judge Troy D. Cross. Cross dismissed the traffic forfeiture case, but he denied Keefe's request to dismiss the '65 case. Lippert allowed Raimer and Officer Schutz to provide false testimony. Lippert refused to turn over discovery emails for which Cross denied a protective order.

Keefe later retained attorney Amanda K. Riek. Riek moved to suppress the blood draw warrant on other grounds, and Cross granted the motion in March 2023. The state then dismissed the charge of operating while intoxicated. Keefe believes that all defendants "violated their oaths and committed actions at the direction of Hepler." Dkt. 4 at 2.

ANALYSIS

Keefe says he brings claims under the Fourth, Fifth, and Fourteenth Amendments, but his theories for relief under these amendments are not clearly articulated. I take Keefe to bring: (1) Fifth and Fourteenth Amendment due process claims based on the manipulation and concealment of evidence, and the submission of false testimony; (2) a Fourth Amendment claim challenging the legality of the blood draw; and (3) Fourth Amendment malicious prosecution claims based on the initiation of the operating while intoxicated and traffic forfeiture cases.

I will not allow Keefe to proceed on a Fifth Amendment claim because the Fifth Amendment Due Process Clause applies only to the federal government's actions. *Dusenbery v. United States*, 534 U.S. 161, 167 (2002). Keefe has sued state officials, so the Fifth Amendment doesn't apply. I will consider the Fourth and Fourteenth Amendment claims only.

## A.  General pleading problem

I begin with a general pleading problem. The basic rule is that mere negligence fails to violate the Constitution. *See Cooney v. Casady*, 735 F.3d 514, 519 (7th Cir. 2013). More specifically, "negligent conduct does not offend the Due Process Clause." *Moran v. Calumet City*, 54 F.4th 483, 493 (7th Cir. 2022). "So an infringement must be intentional, or at least reckless, to come within the reach of the Due Process Clause." *Allen v. Cooper*, 589 U.S. 248, 261 (2020); *accord Moran*, 54 F.4th at 493. Similarly, mere police negligence in obtaining a warrant does not violate the Fourth Amendment. *See Herring v. United States*, 555 U.S. 135, 145 (2009). "There must be allegations of deliberate falsehood or of reckless disregard for the truth, and allegations of negligence or innocent mistake are insufficient." *Id.*

4

Keefe suggests that Hepler led a wide-ranging conspiracy among prosecutors, police officers, and court clerks to deny him his Fourth and Fourteenth Amendment rights after the traffic stop and blood draw. But Keefe has not alleged any facts plausibly suggesting that to be the case. "A complaint must contain more than mere conclusory allegations of such a conspiracy; a factual basis for such allegations must be provided." *Bowman v. City of Franklin*, 980 F.2d 1104, 1107 (7th Cir. 1992). Without the implausible allegation of conspiracy, the complaint at most describes mere negligence or mistake in obtaining the blood draw warrant and processing case records. Keefe has failed to state any plausible Fourth or Fourteenth Amendment claim for this reason alone.

## B. Specific pleading problems

The individual claims in Keefe's amended complaint also suffer problems specific to those claims.

### 1. Judicial immunity

A state judge has absolute judicial immunity from suit for acts or omissions performed in his judicial capacity. *See Briscoe v. LaHue*, 460 U.S. 325, 334 (1983); *Dawson v. Newman*, 419 F.3d 656, 660–61 (7th Cir. 2005). "[J]udicial immunity is not overcome by allegations of bad faith or malice." *Myrick v. Greenwood*, 856 F.3d 487, 488 (7th Cir. 2017).

Keefe alleges that Hepler directed police officers to correct errors in the blood draw warrant and notice of intent to revoke, and court clerks to refrain from recording erroneous documents in a filing system. These allegations don't plausibly suggest that Keefe was acting outside his judicial capacity when he took those actions. *Cf. Polzin v. Gage*, 636 F.3d 834, 838 (7th Cir. 2011) (judicial immunity bars claim that state trial judge falsified transcripts). Keefe suggests that Hepler conspired with the other defendants to manipulate and conceal evidence,

but mere allegations of malice don't overcome judicial immunity. Also, even if Judge Hepler's actions violated Wisconsin law, mere judicial mistakes don't overcome judicial immunity. *See Forrester v. White*, 484 U.S. 219, 227 (1988). I will not allow Keefe to proceed on any claims against Hepler.

### 2. Quasi-judicial immunity

The basic rule is that court officials who carry out functions specifically directed by a judge are entitled to absolute quasi-judicial immunity from suit for those actions. *See Richman v. Sheahan*, 270 F.3d 430, 437 (7th Cir. 2001); *Kincaid v. Vail*, 969 F.2d 594, 601 (7th Cir. 1992).

Keefe alleges that Hepler directed Raimer to refrain from entering the original blood draw warrant and notice of intent to revoke into any record until he authorized their entry. A claim based on this allegation would be barred by quasi-judicial immunity.

Keefe also sues court clerks Mecum and Kim Schutz. His theory of relief against these two defendants is not clearly articulated, but his allegations suggest that he faults them for not recording, or for not properly recording, the unendorsed blood draw warrant and notice of intent to revoke. Keefe also alleges that all defendants acted at the direction of Hepler. Claims based on these allegations are barred by quasi-judicial immunity.

Keefe alleges that Chief Klafke told Officer Todryk to email Mecum and Kim Schutz and tell them that the notice of intent to revoke had been issued incorrectly and voided in TRACs. Klafke and Todryk are not judges, but Keefe does not describe any action that Mecum and Kim Schutz took at their direction; the documents had already been voided in TRACs. These allegations would not overcome quasi-judicial immunity and they do not state any

plausible constitutional claim. I will not allow Keefe to proceed against Raimer, Mecum, or Kim Schutz on a due process claim based on the manipulation or concealment of evidence.

### 3. Prosecutorial immunity

Prosecutors are immune from liability under 42 U.S.C. § 1983 for their work as advocates. *See Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976). A prosecutor's advocacy role includes acts that the prosecutor takes to prepare for the initiation of judicial proceedings, and acts that the prosecutor takes to present the state's case. *See id.* at 431; *Greenpoint Tactical Income Fund LLC v. Pettigrew*, 38 F.4th 555, 565 (7th Cir. 2022).

I take Keefe to allege that Yaskal and Lippert violated his due process rights by bringing the criminal and traffic cases against him even though those actions were based on erroneous or manipulated evidence. Keefe challenges Yaskal and Lippert's initiation of the cases, so prosecutorial immunity bars claims based Keefe's allegations. I will not allow Keefe to proceed on his due process claims against Yaskal and Lippert based on the initiation of the criminal and traffic cases.

### 4. Absolute immunity for courtroom testimony

Keefe brings due process claims against Officer Schutz and Raimer based on the allegation that they provided false testimony at the hearing on his motion to dismiss. I will not allow Keefe to proceed on these claims because absolute immunity bars them. *See Khorrami v. Rolince*, 539 F.3d 782, 789 (7th Cir. 2008) ("This court [has] recognized that the absolute immunity extends to a police officer's participation in pretrial proceedings . . . ."); *Curtis v. Bembenek*, 48 F.3d 281, 285 (7th Cir. 1995) (the officer was entitled to absolute immunity for his testimony at a preliminary hearing and a hearing on a motion to quash arrest and suppress evidence).

### 5. Fourteenth Amendment claims against Yaskal and Lippert based on failure to disclose evidence

Keefe alleges that the prosecutor defendants failed to disclose evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). But Keefe hasn't alleged facts plausibly suggesting that Yaskal or Lippert suppressed material exculpatory or impeaching evidence. *See id.* at 87; *Carvajal v. Dominguez*, 542 F.3d 561, 566–67 (7th Cir. 2008). I will not allow Keefe to proceed on his *Brady* claims against Yaskal and Lippert.

### 6. Fourth Amendment claim against Officer Schutz

Keefe brings a Fourth Amendment claim against Officer Schutz based on the blood draw. Keefe suggests that the blood draw warrant was not supported by probable cause, primarily because Schutz failed to endorse it. In other words, Keefe's theory is that the arrest lacked probable cause because of the technical defect in the blood draw warrant.

"Because a blood draw is a search of a person, a search warrant for a blood draw must be supported by probable cause." *Petersen v. Pedersen*, No. 22-cv-684, 2024 WL 343226, at *6 (E.D. Wis. Jan. 30, 2024), *aff'd*, 140 F.4th 421 (7th Cir. 2025). As a general rule, the issuing judge must make a practical, common-sense decision about whether, given all the circumstances set forth in the supporting affidavit, there is a fair probability that the search will reveal evidence of a crime. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983).

A search warrant may also be based on an officer's sworn oral testimony communicated to the judge by telephone, radio, or other means of electronic communication. Wis. Stat. § 968.12(2)–(3). The standard for upholding the issuing judge's finding of probable cause under § 968.12 is the same as the standard under the Fourth Amendment. *State v. Denure*, 2002 WI App 56, ¶ 14. Courts must give "great deference" to the issuing judge's determination

that probable cause existed. *Id.*; *see also Gates*, 462 U.S. at 238–39 ("The reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." (alterations adopted)).

Keefe's allegations indicate that the unendorsed blood draw warrant was supported by probable cause. Keefe alleges that Officer Schutz stopped him at night, and it seems likely that he had to speak with Hepler, the after-hours judge, for the blood draw warrant to be approved. *Cf. State v. Krajewski*, 2002 WI 97, ¶ 42 ("Obtaining a search warrant to authorize a blood draw may present practical difficulties. The principal difficulty is reaching a judge or court commissioner after normal working hours."). Keefe hasn't alleged any facts plausibly suggesting that Officer Schutz lacked a reasonable basis to believe that he was operating while intoxicated, and he does not allege that the blood draw came back negative. Keefe's allegations don't support even an inference that the information that Schutz provided to Hepler failed to support a determination of probable cause.

Under these circumstances, the initial absence of Officer Schutz's signature on the blood draw warrant was immaterial. *See State v. Hay*, 2020 WI App 35, ¶ 23 n.7 ("Affidavits and warrants can be formalized, if necessary and as appropriate, *after* the judge approves the blood draw[.]" (emphasis in original)); *State v. Kerr*, No. 2016AP1766-CRNM, 2017 WL 1628519, at *3 (Wis. Ct. App. Apr. 28, 2017) ("The court determined that the lack of signature on the affidavit was irrelevant because the issuing magistrate relied on the officer's sworn testimony over the telephone. We agree . . . ."). I will not allow Keefe to proceed on a Fourth Amendment claim against Officer Schutz.

### 7. Malicious prosecution claims

To state a claim for malicious prosecution under § 1983, the plaintiff must plausibly allege that the defendant instituted a criminal prosecution against him without probable cause and with malice (that is, a purpose other than bringing him justice), and that the prosecution ended without a conviction. *See Thompson v. Clark*, 596 U.S. 36, 44, 49 (2022); *Evans v. Matson*, No. 23-2954, 2024 WL 2206638, at *2 (7th Cir. May 16, 2024).

Keefe challenges the institution of the cases for operating while intoxicated and traffic forfeiture. But Keefe does not expressly allege that these actions were brought without probable cause, and his allegations don't suggest that to be the case. Quite the contrary, his allegations indicate that probable cause supported the charge of operating while intoxicated. Keefe alleges that Kim Schutz used corrected documents to institute the traffic forfeiture action, but this allegation suggests only that she opened the case on the court's docket. It does not plausibly suggest that she made the decision to bring the case. But, even if Keefe could show that the cases were instituted without probable cause, he hasn't alleged facts plausibly suggesting that they were instituted for a malicious purpose. Keefe broadly alleges that Hepler led a conspiracy to deprive him of his constitutional rights, but this allegation is implausible. I will not allow Keefe to proceed on a malicious prosecution claim.

## CONCLUSION

When a plaintiff proceeds without counsel, the court of appeals has cautioned against dismissing his case without giving him a chance to amend the complaint. *Felton v. City of Chicago*, 827 F.3d 632, 636 (7th Cir. 2016). But "if it is clear that any amendment would be futile," I need not grant leave to amend. *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013).

Keefe already received an opportunity to clarify his allegations and claims for relief, and the amended complaint's allegations show that his claims suggest negligence at most and are barred by several immunity doctrines. It's clear that further amendment would be futile, so I will dismiss the amended complaint with prejudice.

ORDER

IT IS ORDERED that:

1. Plaintiff Randy Jay Keefe's amended complaint, Dkt. 4, is DISMISSED with prejudice.

2. The clerk of court is directed to enter judgment and close the case.

Entered April 2, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

11